IN THE MATTER OF THE PETITION OF KIP, TRUSTEE, &c., *v.* THE RECEIVERS OF THE MUTUAL FIRE IN-SURANCE COMPANY.

Where a mortgagee properly holds a policy of insurance on mortgaged pre-mises and the mortgagee sells subject to the mortgage, but the policy re-mains in the mortgagor's name (assigned to the mortgagee) without the buyer having had it in any way changed, and a fire happens : the mort-gagee, on claiming from the insurance company, should permit the insu-rers to take an interest in the mortgage to the extent of the fire claim, and the buyer could have no benefit of it in any other way.

*July* 18,
1842.

*Vendor
and Pur-
chaser.
Mortga-
gor and
Mortga-
gee.
Insurance.
Policy.*

THIS case came before the court on the following peti-tion of Isaac L. Kip, trustee, &c. :—

"Respectfully showeth, &c.—that on or about the first day of October in the year one thousand eight hundred and thirty-two, Anson Blake, of the city of New York, being seized in fee of the lot of land and premises in the city of New York known as No. 4 William street, with the five story brick store then standing thereon, borrowed of your petitioner, as trustee as aforesaid, the sum of ten thousand dollars, and to secure the repayment thereof made and exe-cuted to your petitioner, as trustee as aforesaid, his four seve-ral bonds or obligations, all bearing date on the said first day of October in the year aforesaid, and each conditioned for the payment of the sum of two thousand five hundred dollars on the first day of October in the year one thousand eight hundred and thirty-seven, with interest at the rate of six per cent. per annum payable half pearly ; that the said An-son Blake, at the time of the making and delivery of the said four bonds and for the purpose of securing the repayment thereof did, together with his wife, make, execute and deli-ver to your petitioner, as trustee as aforesaid, a certain in-denture of mortgage bearing even date with the said bonds, conveying to your petitioner, as trustee as aforesaid, in fee, by way of mortgage, the aforesaid lot of land No. 4 William street, with the buildings erected thereon—which said mort-gage contains a clause in the words and figures following— that is to say : 'And further, that at all times hereafter,

"until the payment and discharge of the said several sums of money mentioned in the conditions of the said several bonds or obligations and the interest thereof, he, the said Anson Blake, his heirs, executors, administrators and assigns will have and keep the buildings erected or to be erected on the above described lot of ground and premises sufficiently insured against fire in some competent fire insurance company in the city of New York, such as shall be satisfactory to the said party of the second part, his executors, administrators or assigns; and will, by way of further security, assign the policy and policies of insurance to the said party of the second part, his executors, administrators and assigns; and that he, the said Anson Blake, his heirs, executors, administrators or assigns shall and will pay all such taxes, assessments and payments as may be lawfully laid or imposed upon the above granted lot, piece or parcel of land—and in case of his or their neglect or refusal so to do, it is hereby mutually covenanted and agreed by and between the parties to these presents, that the said party of the second part, his executors, administrators or assigns may insure the same in a sufficient manner in his and their own names, but at the proper costs and charges of the said Anson Blake, his executors, administrators and assigns, and continue such insurance, from time to time, until the payment of the several sums of money mentioned in the conditions of the said bonds or obligations, and also pay such taxes, assessments and payments as may be imposed on the said premises as aforesaid; and the said several bonds or obligations and this present indenture of mortgage shall operate as a security for the repayment of such premiums of insurance and taxes, assessments and payments and the interest thereof respectively: —and that the said bonds and mortgage have been ever since they were respectively executed and still are in full force and effect and unsatisfied, either in whole or in part, except as to the interest which has become payable thereon. And your petitioner further shows that, on the said first day of October in the year one thousand eight hundred and thirty-two, the said Anson Blake effected a policy of insurance in the usual form with the Mutual Insurance Company of the city of New York, for the sum of four thousand dollars

on the aforesaid store standing on the lot embraced by the said mortgage; and that, on the second day of the said month of October in the year last aforesaid, the said Anson Blake, in pursuance of an agreement to that effect made at the time when the said loan was effected and by and with the written consent of the said company, endorsed on the said policy, assigned in writing and delivered the said policy to your petitioner as a further collateral security for the payment of the said bonds; that the said policy of insurance hath ever since been and still is in the possession of your petitioner under and by virtue of the said assignment. And your petitioner further shows that the said policy of insurance was continued for the further term of one year, from the first day of October in the year one thousand eight hundred and thirty-three, by a certificate in writing bearing that date and made and executed by the said company. And for the further term of six months and seventeen days from the fourteenth day of October in the year one thousand eight hundred and thirty-four by a certain other certificate in writing, bearing the said last mentioned date and made and executed by the said company—a copy of which said policy and consent, &c. &c. And he further shows that the premiums of insurance on the said policy and on the said two several renewals thereof were paid to the said company by the said Anson Blake as your petitioner believes; and that the said two several certificates of renewal were, at or about the time they respectively bear date, delivered to your petitioner as and for such further collateral security as aforesaid and ever since have been and still are in his possession for that purpose. And your petitioner further shows that, on or about the fifth day of February in the year of our Lord one thousand eight hundred and thirty-five, the said store, so insured as aforesaid, was totally destroyed and rendered valueless by fire, originating, as your petitioner is informed and believes, in a neighboring building: and that the damage thereby sustained exceeded, as your petitioner also verily believes, the said sum of four thousand dollars. That your petitioner, thereupon, caused due notice of the said loss in writing to be given to the president of the said company; and afterwards, as your petitioner is informed and believes,

the preliminary proofs of loss required by the said policy
were delivered to the said company. And your petitioner fur-
ther shows that, as he has been informed and believes, the said
The Mutual Insurance Company of the city of New York
was an incorporated insurance company in the city of New
York within the true intent and meaning of the act of the
legislature of the State of New York, entitled, "An act for
the more convenient adjustment of the affairs of certain in-
surance companies in the city of New York rendered insol-
vent by the late fire in that city," passed January 18, 1836;
and that the said company, as your petitioner is informed
and believes, was rendered insolvent by the said fire which
occurred in the city of New York on the sixteenth and se-
venteenth days of December in the year one thousand eight
hundred and thirty-five; and that, under and by virtue of
the said act and pursuant to the provisions thereof, George
Ireland, John Oothout and Robert Benson were, on or about
the twenty-second day of February in the year one thousand
eight hundred and thirty-six, as your petitioner is informed
and believes, duly constituted and appointed and ever since
have continued to be and now are receivers of the estate and
effects of the said The Mutual Insurance Company of the
city of New York pursuant to the provisions of the said act
and the act therein referred to; and that the said receivers,
as your petitioner is also informed and believes, have recent-
ly declared, out of the assets of the said company, a dividend
of eighty per cent., on all admitted and liquidated claims
upon the said company and, in various instances, have paid
the same to persons entitled thereto.   And your petitioner
further shows, that, as he is informed and believes, the said
company always admitted that the loss and damage occa-
sioned by the fire herein first above referred to, to the said
insured store, exceeded the sum of four thousand dollars;
but that the said company, before its said insolvency, re-
fused to pay the said loss : except on certain conditions with
which your petitioner is advised that he ought not to com-
ply and the said receiver of the said company, since their
said appointment, although, as your petitioner is informed
and believes, one of them has been applied to for that pur-
pose at the office of the said receivers, have not issued their

certificate therefor or paid the same or any dividend thereon:

Wherefore your petitioner prays, that the said George Ireland, John Oothout and Robert Benson, as such receivers as aforesaid, may, by the order of this honorable court, be compelled to issue to your petitioner, as such trustee as aforesaid, their certificate for the amount of the aforesaid loss, discharged from any condition or obligation whatever, except such as may be common and applicable to all other admitted creditors and claimants and to pay to your petitioner the aforesaid dividend of eighty per cent. on the said amount and to make and pay to him such further dividend or dividends thereon as may hereafter be declared and paid on the admitted claims against the said company. And also your petitioner's costs and charges on this petition to be taxed. Or, for such other and further relief in the premises as to your honor may seem meet and proper and as may be consistent with equity and good conscience. And your petitioners, as in duty bound, will ever pray, &c."

(*Signed and sworn to.*)

This petition was met by the following affidavit of the receivers of the Mutual Insurance Company—" George Ireland, John Oothout and Robert Benson, being duly sworn, severally depose as follows : George Ireland maketh oath that, at the times mentioned in the petition of Isaac L. Kip, he was president of The Mutual Insurance Company therein named. That, upon examination, made on behalf of the said company in relation to the loss by fire therein mentioned, it appeared that Anson Blake, prior to the fire in the petition mentioned and on the thirty-first of December, eighteen hundred and thirty-four, entered into a contract for the sale of the said premises to John Bloodgood, a copy of which, as the officers of the said company ascertained from the said Anson Blake, is as follows : ' Anson Blake agrees to give J. Bloodgood ten thousand dollars for his interest in the Van Cleef property and nine hundred per lot for twenty lots on Atlantic street Pacific and Gerretson, the following numbers: 255, 256, 257, 258, 269, 270, 271, 223, 224, 225, 280, 281, 282, 283, 294, 295, 296, 248, 249, 250, payable as follows—the store No. 4 William street at $25,000 ; bond and

mortgage of J. E. Underhill payable 1st August 1835, for four thousand dollars and his note at six per cent. interest on the whole calculation to be considered cash 1st February 1835.

'JOHN BLOODGOOD,

'ANSON BLAKE.

'New York, Dec. 31, 1834.'

"The officers of the said company further ascertained, by the records of conveyances in the city of New York, that the said store, insured in the said policy, was conveyed by Anson Blake and his wife to William Bloodgood, by deed bearing date the twentieth day of January in the year of our Lord one thousand eight hundred and thirty-five expressed to be in consideration of twenty-five thousand dollars paid to the grantors, duly acknowledged on that day, and recorded the eighteenth day of March of the same year, in which deed it was contained, in relation to the aforesaid mortgage on the lot to Isaac L. Kip in the said petition named, as follows: 'To have and to hold the above granted, bargained and described premises, with the appurtenances, unto the said party of the second part his heirs and assigns, to his and their own proper use, benefit and behoof for ever. Subject to the payment, as part of the consideration money hereinbefore mentioned, of a mortgage on the premises hereby conveyed, given by the parties hereto of the first part to Isaac L. Kip, trustee, &c. for ten thousand dollars and interest thereon accruing at six per cent. per annum payable half yearly, which said mortgage is dated on or about the first day of October eighteen hundred and thirty-two and payable on or about the first day of October eighteen hundred and thirty-seven, which said mortgage the party hereto of the second part hereby assumes and agrees to pay, together with the interest hereafter due or to become due thereon, and, when paid, is to be cancelled and given up to the parties of the first part together with the bonds accompanying the same.'

"And he further saith, that the officers of the company understood and he believes correctly, that the said deed was executed and delivered in fulfilment of the said contract with John Bloodgood under whose right William Bloodgood received the said conveyance; and the officers of the company further understood, and he believes correctly, that, at

the time of the loss, the building was not, in fact, at the risk of the said Anson Blake, but of the said William Bloodgood or John Bloodgood ; and that the claim made by the petitioner, Isaac L. Kip, was really and truly for the interest and benefit of the said William Bloodgood and John Bloodgood : the ground comprised in the said mortgage having, at all times, been more than adequate security for the mortgage held by him. He further saith that, upon being applied to for the payment of the loss, the said company directed a letter to be delivered to the said Isaac L. Kip, on the day of its date, of which the following is a copy :

'New York, Dec. 16, 1835.

'SIR : In relation to the claim made in your name on the Mutual Insurance Company, for loss by fire on the premises No. 4 William street mortgaged to you by Anson Blake and the policy on which you claim to hold by assignment from him, the Insurance Company beg leave to recall to your notice that, by a contract in writing bearing date the 31st day of December A. D. 1834 between Anson Blake and John Bloodgood, the premises mortgaged were sold by the former to the latter, which sale was afterwards consummated by the due execution of the deeds. Under these circumstances, the company are advised that, as between them and Mr. Blake and Mr. Bloodgood, the premises were at the risk of the latter gentleman and not under the protection of their insurance at the time of their destruction ; and that you can only claim on the ground of holding the policy as collateral to the mortgage. While they are willing to meet such claim, so far as you are in fact interested, they cannot submit to have the money applied in prejudice to them to the exoneration of the land from a charge which Mr. Bloodgood (at whose risk the property was) ought to bear. They, therefore, inform you, that they are willing to pay the amount of the loss into your hands : upon your giving them the benefit of your mortgage for their reimbursement, after the balance of the amount of your mortgage shall be paid, to be collected by the company at their own expense and risk without any act on your part to defeat or impair their rights. Or they are willing to pay you the amount of your bond and mortgage, on taking an assignment thereof by which

they will be enabled to test the claim made for the benefit of Mr. Bloodgood by proceedings with him directly. Or if you are desirous of keeping the money invested, according to the present terms of the investment, they will take such assignment and give you, in return for it, the bond of the company, payable at the same periods and with the same interest as that you hold of Mr. Blake, secured by other securities of bond and mortgage equal in value, in your own judgment, to the property now held by you as security.

1842.

IN THE MAT-
TER OF KIP.

Should none of these propositions be accepted, the company will be bound to conclude that your claim is put forward simply for the benefit of Mr. Bloodgood, to seek a payment to which, in his own name, he is not entitled, and will deem themselves justified in proceeding against you in chancery for the defence of what they deem their equitable rights and shall, in each case, hope to have the expenses of such proceedings charged upon you in case their rights shall be allowed by that court. Your obd't servt,

GEORGE IRELAND,
Pres't. Mutual Ins. Co.

'ISAAC L. KIP, Esq. Trustee, &c.'

"With the offers contained in which letter, the said Isaac L. Kip refused to comply; and which letter contains the only conditions which the said company have ever interposed to the payment of the said loss and which the receivers are advised are just and equitable conditions.

"And the said John Oothout and Robert Benson for themselves say that they believe the preceding statement of George Ireland to be true."

(*Signed and sworn to.*)

Mr. *G. Griffin*, for the petitioner.

Mr. *D. Lord*, for the receivers.

1st. By the contract of sale of December 31st, 1834, the buildings insured were, from the first day of February one thousand eight hundred and thirty-five and prior to the loss, at the risk of Bloodgood, the purchaser, and not of Blake

the assured. The policy did not attach to the sale nor pass to the vendee.

2d. By the contract of sale of December the thirty-first 1834 and by the bargain and sale dated the twentieth day of January one thousand eight hundred and thirty-five, Blake was entitled in every event to call on Bloodgood and on the premises conveyed to pay off the mortgage to Kip.

3d. The transfer of the policy to Kip did not divest Blake of his right to it on payment of the mortgage nor charge his portion as assured further than to subject it to a lien for the mortgage money.

4th. Upon payment of the mortgage to Kip, Blake was entitled to the policy and to call upon Bloodgood to pay the contract price of the lands.

5th. The insurers of Blake and Kip are, upon payment of the loss, entitled to be subrogated to all the rights for reimbursement which they possessed at the time of the loss; and among these to be substituted on Blake's claim on his contracts of December 31st, 1834 and 20th January 1835 against Bloodgood.

6th. It follows that Kip was bound to admit of this substitution on being paid his loss and he can be admitted claimant only on this equitable condition.

7th. Having refused this condition he must, if he now is admitted to recover the insurance, pay costs and submit to account for the value of what could have been recovered if the substitution had been admitted on the sixteenth day of December one thousand eight hundred and thirty-five.

*Jan.* 16, 1843.

THE VICE-CHANCELLOR :—By the policy of insurance in question, the Mutual Insurance Company insured Blake against loss and damage by fire—he being the owner of the premises at the time of the contract.

By an assignment of the policy to Kip, the mortgagee of Blake, made with the consent of the company, it enured to the benefit of the former as collateral security for the payment of his mortgage debt. This was the only object of the assignment to Kip. In case of loss, he was to receive payment on the policy and then, as between himself and Blake, he was to apply the money towards liquidating the mort-

gage—or if Blake should, himself, pay off the mortgage, he would be entitled to a return or re-assignment of the policy from Kip and could then receive the insurance money himself.

But to entitle Blake to the benefit of the policy in case of loss, either for the purpose of liquidating his mortgage-debt or for his own indemnification after he should have paid off that debt and entitled himself to a return of the policy, it was essential that he should remain the owner of the premises insured.

The sale of the property by Blake to Bloodgood put an end to the contract of insurance as between Blake and the company, except so far as Kip's right to it extended by way of collateral security as before mentioned. That right no act of Blake's or of the company could divest without Kip's consent. He might still claim to hold the policy for the benefit of his security, which was all that remained of the contract after Blake had parted with all his interest in the property; and if the company were obliged to pay Kip for a loss of the property insured, they, standing in the relation of sureties to him for so much of the mortgage debt, would be entitled, by subrogation, to the benefit of the mortgage for their reimbursement as sureties, after Kip should be paid in full. This would not be so if the contract of insurance still remained in force for the benefit of Blake. But it did not —his sale, as before observed, terminated it. Bloodgood, by becoming the purchaser, acquired no right to the policy of insurance or the benefit of it, unless Blake had assigned his reversionary interest in it to Bloodgood and the company had assented, thereby becoming, in effect, insurers to him. The company never contracted to insure Bloodgood as the owner and they could not be made to do so by assignment from Blake or from Kip without their consent. These views appear to me to be sustained by the principle established in the case of *The Ætna Insurance Company* v. *Tyler*, 16 Wend. 285 and *The Traders Insurance Company* v. *Robert*, 9 Wend. 404; S. C. in Error, 17 Ib. 631. Mr. Bloodgood became the owner of the premises before the loss by fire occurred, although the deed of conveyance appears not to have been actually delivered until after the fire. Still;

he had an insurable interest as owner from the time of his contract of purchase.   He however, took no measures to insure himself by virtue of the policy in question.   And al-though this application is made confessedly on his behalf and for his benefit in the name of Kip, the mortgagee, yet he can have no better or more extensive right or equity than Kip could claim.   If he was before the court on his own account claiming the dividend which the receivers are enabled to make among the creditors of this insolvent company, he would be obliged to give them an interest in the mortgage for and towards their reimbursement.   The present application appearing to be prosecuted for the benefit of Bloodgood and upon a bond of indemnity to Kip for the costs, must be denied with costs to be taxed and to be paid by Bloodgood the ostensible party to it.   And if Mr. Kip has any apprehension of an insufficiency of his mortgage security to pay his debt so as to deem it worth while to claim and receive a dividend upon the amount of the policy on the terms suggested, viz. admitting the receivers to take an interest in the mortgage for and towards their reimbursement out of the money to be derived from a foreclosure of the mortgage after Mr. Kip shall be paid and satisfied, he must be left to do so.