BENJAMIN PEARMAN

*v.*

THOMAS GOULD et al.

A policy of insurance for $2,000 was issued to a land-owner, who held the premises subject to two mortgages. It was made payable to the mortgagees, and was delivered to the first mortgagee, whose mortgage was for $1,000. A decree to foreclose the second mortgage was obtained, and a sale of the premises thereunder ordered. On the day of sale, but before it took place, the house thereon was destroyed by fire. The land-owner made proof of loss about eight days afterward, and five months thereafter the company paid the first mortgagee the full amount due on his mortgage, and took an assignment thereof. The premises were sold under the foreclosure the same day the fire occurred, but afterward, and were bought by complainant about two months thereafter from the vendee of the second mortgagee, who had purchased at her foreclosure sale, and held the sheriff's deed therefor. On bill to compel the cancellation of the first mortgage, on the ground that the company ought to have paid the insurance money, which would then have gone to satisfy the first mortgage.—*Held*,

(1) That the company could not set up, as a defence, that suit on the policy had not been brought within a year after the loss occurred, as provided in the policy, because the first mortgagee might have brought suit thereon before he assigned his mortgage to the company, and after such assignment the company took his place.

(2) Nor that the land-owner was not, in fact, the actual owner at the time she obtained the policy, on the ground that one B. had bought the premises at sheriff's sale, under a judgment against such land-owner, before the policy was issued, because the sheriff's deed was not delivered to B. until after the policy had been obtained, and the sheriff's sale to B. and all the proceedings in that case were afterward set aside and annulled.

(3) Nor that, after the policy had been issued, the premises were again sold under the foreclosure of the second mortgage, because an ordinary decree of foreclosure is not an alienation of the premises within the prohibition of the policy, but requires, in addition, the sale thereunder to consummate it, but in this case the fire occurred before such sale.

(4) And that the company is not entitled to subrogation to the first mortgagee's rights, by virtue of the payment of that mortgage, and its assignment to them, because the policy was obtained by the owner of the equity of redemption, and the premiums thereon paid by her. The case of *Sussex Co. Mut. Ins. Co.* v. *Woodruff, 2 Dutch. 541*, distinguished.

(5) The first mortgage decreed to have been satisfied by the company's payment thereof, and should be canceled on the record.

Pearman *v.* Gould.

. Bill to quiet title.   On final hearing on pleadings and proofs.

*Mr. J. F. Cahill,* for complainant.

*Mr. J. S. Barkalow,* for defendants.

THE CHANCELLOR.

This suit is brought under the act " to compel the determination of claims to real estate in certain cases, and to quiet the title to the same."   The complainant purchased from Richard Van Ess a lot of land, upon which were a dwelling-house and barn. The property was conveyed to him by warranty deed dated April 26th, 1882.   Van Ess got his title from Mary Beebe, who, with her husband, conveyed to him by deed dated March 1st, 1882.   She got her title from Albert A. Van Voorhies, late sheriff, by deed dated February 21st, 1882, under foreclosure proceedings upon a second mortgage held by her upon the property.   The premises were owned in 1872 by John Koman, who, on the 4th of April in that year, gave a mortgage thereon (the first mortgage), for $1,000 and interest, to Thomas Gould. The complainant's title, it will be seen, is derived from the sale under foreclosure of the second mortgage.   In 1880 (before the foreclosure) Harriet Pearsal owned the property.   She conveyed it, by deed dated March 3d, in that year, to Catharine Coleman, who was the owner of it when the foreclosure took place.   On the 12th of August, 1881 (the foreclosure sale did not take place until February 7th, 1882), the German American Insurance Company of New York issued a policy of insurance to Catharine Coleman against loss or damage by fire upon the dwelling-house and barn and certain chattels, for one year, for $2,000.   By the terms of the policy the loss, if any, was to be payable, first, to Thomas Gould, and second, to Mary Beebe (the two mortgagees), as their mortgage interests might appear.   The policy was delivered to Mr. Gould, the holder of the first mortgage, and was held by him until and after February 10th, 1882, the day on which the foreclosure sale took place.   In the morning of that day (the sale took place in the afternoon), the house was destroyed

by fire. The complainant, as before stated, bought the property April 26th, 1882, about two months after the fire. Mrs. Coleman made proof of loss on or about the 18th of February, 1882, about eight days after the fire. On the 18th of July, 1882, the company, through Elias Osborne, its agent and trustee in the matter, obtained from Mr. Gould an assignment of his mortgage in consideration of the payment by it to him of the whole amount then due thereon for principal and interest, and received the mortgage and the bond and policy from him accordingly. Mr. Osborne took the assignment in his name, but in trust for the company. The bill, alleging that the Gould mortgage was paid off by the company with the money due under the policy, prays a decree against Gould and Osborne and the company, declaring that they and each of them have no estate, interest or right in or to the property. In fact, the suit is brought to compel the company to cancel the mortgage, upon the ground that it ought to have paid the insurance money, in which case part of it would have gone to the satisfaction of the Gould mortgage.

The company insists that the complainant, who bought the property after the fire, subject to the Gould mortgage, would have no claim to the application of the insurance money, if any were due; and it also insists that no money is recoverable upon the policy, on the ground that in 1880, before the policy was issued, the property was sold and conveyed, under a judgment against Catharine Coleman, to one Bridget Ann Coleman, who thenceforward, until the foreclosure sale, was the owner thereof (so that, the company insists, Catharine Coleman did not own the property when the policy was issued), and that on February 10th, 1882, after the policy was issued, the property was again sold, under the foreclosure proceedings, to Mrs. Beebe; whereas the policy provides that immediately upon the passing or entry of a decree of foreclosure, or upon a sale under a deed of trust or levy under execution, or if the insured shall be adjudged a bankrupt, or if the property insured shall be assigned under any bankrupt or insolvent laws, or if any change shall take place in the title or possession of the property, whether by sale, transfer, conveyance, legal process or judicial decree, or if the policy, before loss,

shall be assigned without the consent of the company endorsed thereon, or if the assured shall not be the sole, absolute and unconditional owner of the property, then and in every such case, the policy shall be void.  The company defends, upon the further ground that the policy provides that in any case there shall be no liability on the part of the company, unless suit be brought within one year from the time of making proof of loss; and the company alleges that no suit was, in fact, brought upon the policy within one year from February 18th, 1882, when the proof of loss was made.  There is proof that by a recent decree of this court, made September 7th, 1885, the deed to Bridget Ann Coleman was, with the judgments, execution and levy on which it was founded, set aside, annulled and declared void; and it appears, by the foregoing statement of facts, that the house was destroyed by fire before the sale under the foreclosure.  The complainant also offers evidence that an agent (now deceased) of the company, in Paterson, after the proof of loss, promised to pay the loss.  He insists that he is entitled to a decree, declaring the mortgage satisfied.  The company denies that the agent referred to had any authority to bind it to pay the loss.

The company obtained the Gould mortgage by purchase thereof from Gould, for the amount of the principal and interest due thereon.  But it took with it Gould's responsibilities as holder of that mortgage towards the complainant, as a subsequent purchaser of the premises for value and with warranty.  When the assignment was made, which was July 18th, 1882, the complainant was the owner of the property and had been such since April preceding.  Mr. Gould testifies that the complainant called upon him, and asked whether he (Gould) held a mortgage upon the property, and he told him he did, and that he held a policy of insurance as collateral, and that he supposed the policy would be paid, and advised the complainant not to buy until the policy had been paid or some settlement had been made about it.  He says he thinks this was before the complainant bought the property, and that it was soon after the fire.  But the complainant swears that he never knew that there was a mortgage upon the property until after he had bought it.  The conversation,

then, to which Mr. Gould testifies, must have taken place after the complainant had obtained title to the property, and while as yet Mr. Gould held both mortgage and policy, and the question as to whether payment would be made or not, under the latter, was unsettled. The company then, about five months after the proof of loss had been made, purchased the mortgage, and got it and the policy from Gould, and has held them ever since. The complainant had no notice, either from Gould or any one else, that the assignment had been made, but appears to have supposed that the mortgage had been satisfied out of the insurance money. The company, under the circumstances, cannot set up, as against the complainant, the defence that suit was not brought upon the policy within the year limited in the policy, because within that period the company took the place of Gould, whose duty it was to take steps to recover the money due upon the policy, to the extent of the amount of the mortgage. He could have brought suit in his own name. *State Ins. Co.* v. *Maackens, 9 Vr. 564.* By the loss, his right to so much of the insurance money as was necessary to satisfy his mortgage became vested. Nor is there anything in the case to show that the right of recovery had then been lost by the conduct of the mortgagor. The conveyance by the sheriff to Bridget Ann Coleman, although dated November 6th, 1880 (the day of the sheriff's sale), was not delivered until October 7th, 1881. It has, as already stated, been set aside and annulled by proceedings in this court. But apart from that fact, until the delivery of the deed, Bridget Ann Coleman had no title to the property. *Green* v. *Steelman, 5 Hal. 193.* So that when Catharine took out the policy in 1881, she had title to the property, and she had both title and possession up to the time of the fire. Under the circumstances, neither the sale nor the conveyance to Bridget Ann Coleman was a change of title within the meaning of the condition of the policy. Nor was it a sale "under a levy under execution" within the meaning of the policy. The sale was invalid, and so were the execution and the judgments on which it was founded. A void sale manifestly is not within the terms of the policy; and so, too, a "change of

the title or possession by legal process or judicial decree," which is void, is not within its provisions.    See *Wood on Insurance* § *326;* and *Strong* v. *Manufacturers Ins. Co., 10 Pick. 40.*    Catharine Coleman, when she took out the policy, was the legal as well as equitable owner of the property.    She acquired title to it, as already stated, by deed from Harriet W..Pearsall to her, March 3d, 1880, and she owned the property when it was insured. There is no evidence that any false representation, either verbal or written, was made to the company or its agent by her, before or at the time of taking out the policy.

The policy provides that immediately upon the passing or entry of a decree of foreclosure, the policy shall be void.    The decree referred to in the provision, is not a decree for sale in a suit for foreclosure, but a decree of strict foreclosure.    A decree of strict foreclosure is an alienation, but a decree in ordinary foreclosure is not.    It was so held in *Kane* v. *Hibernia Ins. Co., 9 Vr. 441,* in which the policy provided that a judgment in foreclosure proceedings should be deemed an alienation of the property.    Under the decree in the Beebe foreclosure suit, the defendants in that suit were not foreclosed until the sale, which did not take place until after the destruction of the house by fire.

No other ground of defence against liability upon the policy has been shown except those above considered.    The mortgage must be held to be satisfied.    The money paid for it must be regarded as so much paid on account of the insurance money.    The company was not entitled to subrogation to Gould's rights on making the payment, for the policy was obtained by the owner of the equity of redemption, and the premium paid by her.    The contract between her and the mortgagee was that the insurance money collected by him should go in satisfaction of his debt. · There is no ground for equitable subrogation of the company.    The cases in which it has been held that such right exists are either those in which the insured has himself insured his special interest, as mortgagee &c., in the property, and is not bound to apply the insurance money to the payment of the debt, or cases in which, although the policy was taken out by the mortgagor, the company, by reason of subsequent peculiar circumstances, was held

to stand in the relation of a surety, and to be entitled to subrogation accordingly. *Sussex County Mutual Ins. Co.* v. *Woodruff, 2 Dutch. 541,* is a case of the former kind. There the mortgagee himself insured, for his own benefit, his interest as mortgagee, and it was held that the company, on paying the loss, was entitled to subrogation to his rights as mortgagee. In *Kernochan* v. *N. Y. Bowery Fire Ins. Co., 17 N. Y. 428,* where a building was insured in the name of the mortgagee, for his own security and that of the mortgagor, the latter paying the premium, it was held that the company was not, on payment, entitled to subrogation to the rights of the mortgagee. In *Matter of Kip, 4 Edw. Ch. 86,* subrogation was decreed where the mortgagor had obtained the policy and assigned it to the mortgagee; but in that case the mortgagor had, before loss, sold the property subject to the mortgage which the purchaser had assumed to pay as so much of the consideration money of the conveyance, and the purchaser had taken no assignment of his grantor's interest in the policy. See *Wood on Insurance* § *471,* and *Sheldon on Subrogation* § *236.* In *Graves* v. *Hampden Insurance Co., 10 Allen 281,* the owner of the equity of redemption of land, in pursuance of a provision in the mortgage, procured a policy of insurance upon the buildings at his own expense, payable to the mortgagee in case of loss, and the policy contained a written provision that no sale of the property should affect the right of the mortgagee to recover in case of loss under the policy. The equity of redemption was afterwards sold, and a loss occurred. The insurance company took an assignment of the mortgage and policy upon paying the amount of the mortgage to the mortgagee. It was held that the purchaser of the equity of redemption was entitled to the benefit of the money so paid by the insurance company to the amount of the policy, and might redeem the land upon paying to the company the balance due upon the mortgage after deducting the amount of the policy. The complainant in this case is entitled to a decree that the mortgage be canceled, and he is entitled to costs.